Our case number five for this morning is Ben-Yisrael against Neal. And as I said, again, we start with Mr. Ausbrook. May it please the court, I'm Michael Ausbrook. I represent Chijioke Ben-Yisrael in this section 2254 appeal. Mr. Ben-Yisrael did not procedurally default his trial ineffective assistance claim arising from his resentencing after obtaining post-conviction relief. Woodsby State clearly said that you may reserve a trial ineffective assistance claim for post-conviction relief. The Indiana courts shut Mr. Ben-Yisrael out of any possibility of pursuing post-conviction relief. I looked at the language of those statutes, and there are kind of two ways you can handle these cases. One, which is the way it's done in federal court with second or successive petitions, is if you've succeeded, let's suppose you show that you had ineffective assistance of appellate counsel on your direct appeal. Well, the remedy is to give you a new untainted appeal. And if you then were to file a 2255 motion, that would be considered not a second motion, but be considered a first motion, even though numerically it's the second. But the first one kind of washes away with the relief that's granted. The language of the Indiana statute is pretty broad. And as I understand it, the Indiana courts haven't been 100% consistent about that. But in many instances, they regard second much more literally than what I just described. And so they expect mechanisms, as Judge Pratt was suggesting, such as this Davis procedure, or such as trying to just bring the ineffectiveness in the direct appeal, because they don't want to be dealing with all of these successive petitions. And it's not up to us to outline Indiana law. It is what it is. Let me be clear about the Davis petition footnote in Judge Pratt's order, Your Honor. A Davis petition always results in a post-conviction petition. Therefore, if Mr. Ben Israel was denied the right to pursue a post-conviction petition, either as of right under post-conviction rule 1 in Marion County, that was dismissed, or as a successive petition by the Indiana Court of Appeals, there's no reason to think that a Davis petition in the direct appeal would have been treated any differently. With respect to raising this ineffective assistance claim in the direct appeal, if Lisa Johnson, Mr. Ben Israel's lawyer, appellate lawyer, in his direct appeal had raised ineffective assistance of counsel, it would have completed the repetition of the mistakes in Mr. Ben Israel's trial and original direct appeal. The Indiana Supreme Court found that Mr. Ben Israel's first appellate lawyer had been ineffective for raising ineffective assistance of counsel in the face of the risk of ineffective assistance being raised judicata in post-conviction proceedings. Ms. Johnson had no idea what other ineffective assistance post-conviction claims might be out there. And after seeing Ben Israel 2, that's the post-conviction decision from the Indiana Supreme Court, I can't imagine what lawyer would have raised an ineffective assistance claim in a direct appeal. I mean, besides which, Judge Pratt found that it was not, per se, ineffective to file a one-page memorandum, a sentencing memorandum, in a case. The Indiana courts. Well, could I just pause on that? Because your opponents argue very strongly, and I think quite persuasively, that if we get past all this, what was said before, and we just think about the merits, you did not focus on mitigating evidence that was omitted. You were talking about the fact that it was just this two-page memorandum and the issue about the DNA retesting, which, of course, goes off the rails when, it turns out, the evidence is destroyed. But that's not before us anymore. But you keep talking about this two-page memorandum, but now, suddenly, we get a full-blown discussion about, or not really full-blown, we get a discussion about mitigating evidence. And it's actually not full-blown, because I'm not sure what mitigating evidence that wouldn't have been cumulative you think should have come in. So I have a couple of problems with this. OK. Mr. Ben-Yisrael filed a pro se petition two days before the statute ran. Right, the ad petition, right. And that gets put on hold. That gets put on hold. There's no way to amend that. He complained about the two-page memorandum. Now, Rule 8A, I believe it is, of the rules governing 2254 and 2255 cases, says that the judge has to look at the petition, the answer, the transcripts, basically the state court record. The only reason a two-page memorandum, and it's actually only one page, the prayer and the certificate of service are on the second page. The only reason that can be insufficient is against the background of what could have been done. And in this case, what could have been, the mitigation evidence that had been developed in the post-conviction proceedings was completely available and completely in the record that Judge Pratt would have seen. But under Baldwin against Reese, you've got to present these things fairly to the state courts. And I don't know when the state courts were ever told that the real ineffectiveness problem was the failure to pursue this mitigation evidence. Again, there's a language of the ineffective assistance claim that was the one-page memorandum. The entire record is in front of the state courts. State courts have already found, Judge Emke's post-conviction trial judge has already found the trial lawyer ineffective the first time for leaving out this mitigation evidence. It's very hard to see how, in light of this entire history of this case and the record that is before the state courts, the state courts could not have been aware that the claim of the one-page memorandum or two-page memorandum being insufficient does not appear against the background of this mitigation evidence. Would you address the effect on this case of a recent decision in Brown extending the Martinez-Trevino exception to procedural default to Indiana prisoners? Yes. I did not mention Brown in the briefing because rehearing is still pending in the case. I'm sorry? I said I did not mention Brown myself in the briefing because rehearing is still pending in Brown. The only thing Brown really does in this case is it says there's no meaningful opportunity in Indiana to raise ineffective assistance, trial ineffective assistance on direct appeal. And I think that supports the fact that there's no procedural default for not having raised the claim in direct appeal. It basically makes Martinez-Trevino available to all Indiana prisoners for all ineffective assistance of counsel claims. So procedural default is just out the window. And you're into the two-part question of Martinez-Trevino? I disagree that it affects this case, Your Honor, because we couldn't go back. The time on the ADPA statute is run. We couldn't go back to amend to say that we left out a claim. I mean, it gets you past a procedural default. It doesn't get you past the statute of limitations. OK. OK. So that's the real problem, the real reason why it does not apply. Thank you very much, Mr. Osbrook. Mr. Kobe? May it please the court. Ben Israel has waived the one claim he raises in this appeal that trial counsel at the Resentencing didn't present sufficient mitigating evidence because he never presented this claim to the district court. So he raises it for the first time in this appeal.          Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. And that's the only claim that he raises at this time. So this court has no basis to review the claim. The district court recognized this in the ruling on the 59E motion, in which the state doesn't even believe his Rule 59 motion actually raised the claim. But the district court went the extra step and said, even if it does raise this extra claim, it's waived because it's raised for the first time in the motion, in the 59 motion. My recollection is that she thought that the Rule 59 motion was an effort to revive the things that had been in the reply brief that she had rejected. But of course, it's obviously too late to raise things for the first time in a reply brief also. Correct. And if you look at the two documents, they are very, very similar. So it was an attempt. Just a quick note about, a little bit more about the procedural history, is that this failure to raise further mitigation evidence was never presented to the state courts. And it's unclear how it could be, because the resentencing court had before it the post-conviction record. And so it had all that evidence before it. So it seems that Benezreal is suggesting that resentencing counsel should have represented the evidence live rather than just relying on the evidence that was presented in the post-conviction hearing. Now, in the post-conviction, I'm fuzzy on when exactly this happened, because this case has had so many stages that I can hardly keep track of them. But I thought the Indiana court did, at some point, acknowledge what the mitigating evidence was and said that they just thought that the circumstances of the crime outweighed. Correct. Correct. On resentencing, the court of appeals looked at that and even looked at the proposed mitigators that apparently, from what the state can tell, Benezreal is saying should be mitigators and being the mental health. And the Indiana court of appeals said, because there was no nexus between any of his mental health and the crime, it wasn't a mitigator of significant weight. And so they found the sentence to be appropriate, given the strength of the mitigators. I mean, strength of the aggravators, which was Benezreal's criminal history and the fact that he was on probation at the time he committed this murder. Right. I mean, he's gone through lots of stages, right? He starts out with a death penalty, and then that winds up, the state decides not to pursue it, I guess, after the evidence was lost? Correct. So now it's just obviously a de facto 150 years, unless he's got some trick we don't have as a life sentence. Right. I believe his projected release date now, he'd be 96 when he's released. 2096? No, he would be 96 years old. Oh, he would be 96, I was going to say. All right, more or less. If there are no further questions, we ask that you affirm the denial of previous relief by the district court. Thank you. All right, thank you very much. I think you saved about a minute, Mr. Asper. At page 26 of the sentencing transcript, Judge Carlisle asks Ms. Rumley whether she has any arguments to make that are not in the sentencing memo. Ms. Rumley says no. So all of the evidence that was developed in post-conviction for which the original trial lawyer was found ineffective or failing to develop was left out. That evidence was sufficient to create an ineffective assistance, a finding of ineffective assistance the first time around in a death penalty case. This is effectively a life without parole case. Ms. Rumley did develop all of the post-conviction mitigation, his behavior, the support of his family, and Judge Carlisle found that to be. I'm sorry, I'm out of time. You can finish your sentence if you like. But Judge Carlisle found that to be of medium mitigating weight. To have had all the omitted evidence from the original, from the post-conviction proceedings included would have almost certainly made a difference in this case. Thank you very much. OK, thank you very much. Thanks to the state as well. We'll take the case under advisement.